**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

LAVERNE J. WHITEHURST,
                              Plaintiff,

     v.                                         No. 06-CV-261
                                                 (LEK/DRH)

MICHAEL J. ASTRUE,[1] Commissioner of
Social Security,
                              Defendant.

---

**APPEARANCES:**                           **OF COUNSEL:**

LAVERNE J. WHITEHURST
Plaintiff Pro Se
134 Leah Street, 1st Floor
Utica, New York 13501

HON. GLENN T. SUDDABY              WILLIAM H. PEASE, ESQ.
United States Attorney for the          Assistant United States Attorney
   Northern District of New York
Attorney for Defendant
100 South Clinton Street
Syracuse, New York 13261-7198

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

## REPORT-RECOMMENDATION AND ORDER[2]

Plaintiff Laverne J. Whitehurst ("Plaintiff") brought this action pursuant to 42 U.S.C. § 405(g) seeking review of a decision by the Commissioner of Social Security ("Commissioner") which found her not disabled. Plaintiff moves for reversal or remand for

---

[1] The complaint named as the defendant Jo Anne B. Barnhart, then the Commissioner of Social Security. On February 12, 2007, Michael J. Astrue assumed that position. Therefore, he shall be substituted as the named defendant pursuant to Fed. R. Civ. P. 25(d)(1).

[2] This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(d).

further consideration and the Commissioner cross-moves for judgment on the pleadings. Dkt. Nos. 5, 6.  For the reasons that follow, it is recommended that the Commissioner's decision be affirmed.

## I.  Procedural History

On November 14, 2003, Plaintiff protectively filed an application for supplemental security income ("SSI") and disability insurance benefits ("DIB") pursuant to the Social Security Act, 42 U.S.C. § 401 et seq. T. 45-47, 170-72.[3]  The application was denied at the hearing level and on October 17, 2005, the Administrative Law Judge ("ALJ") issued a decision finding that Plaintiff was not disabled.  T. 13-19.  The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review on October 17, 2005.  T. 10-12.  This action followed.

## II.  Contentions

On June 11, 2006, Plaintiff submitted a letter-brief in opposition to defendant's motion for judgment on the pleadings.  Dkt. No. 10.  In it, she stated that she is disabled due to arthritis and a herniated disk.  Id.  She stated that she is currently unable to work and that her disability forced her to move back to the State of New York.  Id.  Plaintiff submitted another letter-brief on September 29, 2006.  Dkt. No. 14.  In this letter, Plaintiff reiterated her allegations of disability and stated that she has been consistent in her allegations of pain and limitation due to back, shoulder, and neck pain.  Id. at 1.

---

[3] "T." followed by a number refers to the pages of the administrative transcript filed by the Commissioner.  Dkt. No. 9.

Specifically, Plaintiff stated that at the hearing, she had told the ALJ that she was unable to exercise, walk, or sit for long periods of time. Id. She also stated that she was unable to do household chores and that her family helped her with this. Id. Plaintiff also addressed treatment by various providers including nurse practitioner ("NP") Cathy Cheek and Dr. Chris Newell. Id. at 2. She claimed that she told Dr. Newell that she could do no exercise, could not go on long walks, and could not sit for more than fifteen to twenty minutes. Id. This letter-brief appears to assert that various portions of the hearing transcript and medical record misrepresent Plaintiff's statements regarding her capacities and daily activities.

Defendant argues that the Commissioner's decision was supported by substantial evidence and must be affirmed. Dkt. No. 13 at 1-28.

### III.  Facts

Plaintiff was forty-nine years old at the time of the ALJ's decision. T. 45. She obtained a general equivalency diploma ("GED") and completed two years of college. T. 63. Plaintiff alleges that she has been disabled since May 1, 2002 due to neck, shoulder, and arm pain. T. 45, 55. Plaintiff met the special insured status earnings requirements of the Social Security Act for purposes of establishing entitlement to DIB on the alleged date of onset and continue to meet these requirements through December 31, 2007. T. 59.

## IV.  Standard of Review

### A.  Disability Criteria

A claimant seeking disability benefits must establish that "he [or she] is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A) (2003).  In addition, the claimant's impairments must be of such severity that he or she is not able to do previous work or any other substantial gainful work considering the claimant's age, education, and work experience, regardless of whether such work exists in the immediate area, whether a specific job vacancy exists, or whether the claimant would be hired if he or she applied for work.  42 U.S.C. § 1382c(a)(3)(B) (2003).

The Commissioner uses a five-step process, set forth in 20 C.F.R. § 416.920, to evaluate SSI disability claims:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he [or she] is not, the [Commissioner] next considers whether the claimant has a 'severe impairment' which significantly limits his [or her] physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him [or her] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a 'listed' impairment is unable to perform substantial gainful activity.  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he [or she] has the residual functional capacity to perform his [or her] past work.  Finally, if the claimant is unable to perform his [or her] past work, the

> [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982); see 20 C.F.R. § 416.920 (2007).

The plaintiff has the burden of establishing disability at the first four steps. Shaw v. Chater, 221 F.3d 126, 132 (2d Cir. 2000). However, if the plaintiff establishes that an impairment prevents him or her from performing past work, the burden then shifts to the Commissioner to determine if there is other work which the claimant could perform. Id.

### B.  Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. Machadio v. Apfel, 276 F.3d 103, 108 (2d Cir. 2002). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Shaw, 221 F.3d at 131 (citations omitted). It must be "more than a mere scintilla" of evidence scattered throughout the administrative record. Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); see Curry v. Apfel, 209 F.3d 117, 122 (2d Cir. 2000).

"In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision." Prentice v. Apfel, No. 96 Civ. 851(RSP), 1998 WL 166849, at *3 (N.D.N.Y. Apr. 8, 1998) (citing Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984)). A court, however, cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. Yancey v.

Apfel, 145 F.3d 106, 111 (2d Cir. 1998). If the Commissioner's finding is supported by substantial evidence, it is conclusive. Bush v. Shalala, 94 F.3d 40, 45 (2d Cir. 1996).

### BC. Pro Se Plaintiff

When, as here, a party seeks judgment against a pro se litigant, a court must afford the pro se litigant special solicitude. See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006). As the Second Circuit has stated,

> [t]here are many cases in which we have said that a pro se litigant is entitled to "special solicitude," . . . that a pro se litigant's submissions must be construed "liberally,". . . and that such submissions must be read to raise the strongest arguments that they 'suggest. . . . . At the same time, our cases have also indicated that we cannot read into pro se submissions claims that are not "consistent" with the pro se litigant's allegations, . . or arguments that the submissions themselves do not "suggest, . . ." that we should not "excuse frivolous or vexatious filings by pro se litigants" . . . and that pro se status "does not exempt a party from compliance with relevant rules of procedural and substantive law . . . ."

Id. (citations and footnote omitted).

### V. Discussion

### A. Medical Evidence

Plaintiff alleges that she has been disabled since May 1, 2002 due to neck, shoulder, and arm pain. T. 45, 55.

Plaintiff saw NP Cathy Cheek on May 4, 2001, complaining of bilateral shoulder pain which had persisted for two weeks. T. 125. NP Cheek noted that Plaintiff was ambulatory without a device or assistance and that her gait was steady. T. 125. She had no vertebral tenderness with palpation and her superclavicular and trapezius muscles

6

were very tight and tender bilaterally. T. 125. She exhibited a full range of motion and equal strength of the upper extremities, and grasp strength and reflexes were equal. T. 125. A cervical spine X-ray revealed multi-level degenerative disk disease. T. 125. Plaintiff was prescribed Ibuprofen and given samples of Skelaxin for pain. T. 125.

Plaintiff saw Dr. R.B. Dennis on May 15, 2001. T. 130. Upon physical examination, Dr. Dennis found no appreciable spasm or tenderness about the cervical spine; good mobility of the cervical spine; negative Spurling's, Lhermitte sign, and Hoffman's sign[4]; normal and symmetrical strength in the upper extremities; and lower extremity reflexes at positive two and symmetrical. T. 130. Dr. Dennis noted that "X-rays of the cervical spine revealed mild degenerative changes in the mid-cervical spine." T. 130.

An MRI performed on May 23, 2001 showed right posterior herniation of the C4-C5 disk, central disk herniation of the C5-C6 level with slight indentation of the anterior aspect of the cord, and free disk fragments along the posterior aspect of the C5 vertebral body. T. 128. Plaintiff followed up with Dr. Dennis on May 20, 2001 and reported that she had improved but still experienced soreness, especially in the right upper shoulder and left arm. T. 127. Dr. Dennis opined that surgery would be difficult considering the nature of Plaintiff's degenerative disk disease. T. 127. On June 6, 2001, Dr. Dennis noted that Plaintiff missed a follow-up appointment with Dr. Gruner to whom she had been referred for a second opinion. T. 127.

---

[4] A positive Spurling's test indicates nerve root compression. Taber's Cyclopedic Med. Dictionary (20th ed. 2005), <http://www.statref.com>. A positive Lhermitte sign may indicate trauma to the cervical spinal cord, multiple sclerosis, cervical cord tumor, or cervical spondylosis. Id. An abnormal Hoffman's sign indicates injury to the motor nerve pathways of the spinal cord. Creighton, B., Orthopedic, Neurological, & Chiropractic Physical Examinations: Technique & Significance 30 (1986).

Plaintiff did not see Dr. Dennis again until June 3, 2002, when she complained of stiffness in her neck and reported that when she worked out and hung her arms down, she experienced numbness in her hands. T. 127. On examination, Plaintiff had good mobility of the cervical spine, negative Spurling's and Hoffman's, normal strength in the upper extremities, with biceps, triceps, brachial radialis, knee and ankle jerks symmetrical. T. 126-27. Dr. Dennis prescribed Motrin and advised her to keep a follow-up appointment with Dr. Gruner. T. 126.

Dr. Chris Newell performed a consultative examination on February 23, 2004. T. 131-36. At that time Plaintiff reported last working in May 2002 doing office work. T. 132. She reported doing very little cooking and cleaning dishes, and stated that she had difficulty opening jars because of decreased grip strength. T. 132. On physical examination, she had a normal gait, good neck range of motion, left upper extremity strength and negative 5/5, right upper extremity strength at 5/5, and lower extremity strength at 5/5 bilaterally. T. 133. Her reflexes and sensory examination were normal. T. 133. Dr. Newell opined that Plaintiff could stand and walk for approximately six hours in an eight-hour workday, sit for eight out of eight hours during a workday, lift and carry ten pounds frequently and twenty pounds occasionally, and bend, stoop, crouch, reach, handle, feel, grasp, and finger occasionally. T. 133-34. Dr. Newell reported no visual or communicative limitations. T. 134. Her range of motion of the cervical spine, dorsolumbar spine, and shoulder showed mild limitations. T. 135. She had no range of motion limitations of the elbow, hands, fingers, knee, ankle, or wrist. T. 135-36.

A Residual Functional Capacity ("RFC") assessment was completed by agency physician James R. Wickham on February 26, 2004. T. 137-44. Dr. Wickham found that

Plaintiff could occasionally lift and carry twenty pounds and ten pounds frequently; stand, walk, and sit for approximately six hours in an eight-hour workday; push and pull to the extent of her lifting and carrying restrictions; and reach with some limitation.  T. 138, 140. Dr. Wickham stated that Plaintiff's complaints of pain were partially credible, but noted that she drove, attended church, participated in loan closings when asked, prepared simple meals, performed light household tasks, shopped once per week with assistance in lifting and carrying, and took care of substantially all of her personal grooming needs.  T. 139. Plaintiff was found to have no postural, visual, communicative, or environmental limitations.  T. 140-42.  Dr. Wickham opined that Dr. Newell's stated postural restrictions were "excessively restrictive and not supported by the totality of the evidence."  T. 144. Another agency physician, Dr. Robert Chaplin, fully concurred with Dr. Wickham's opinion. T. 144.

Plaintiff was examined by Dr. Richard Jackson on May 24, 2004.  T. 145.  Dr. Jackson opined that her condition made her unable to work for twelve months as of May 2001, but he believed Plaintiff's condition would improve.  T. 145.  He recommended physical therapy.  T. 145.

On April 8, 2005, Plaintiff was examined by Dr. Yu-Lian Chang, who noted tenderness over the back of the neck and shoulders bilaterally.  T. 151.  Movement of the bilateral shoulder joints was within normal limits, but Plaintiff experienced pain with hyperextension of the shoulder joint.  T. 152.  She had 5/5 strength in all extremities, normal reflexes, intact sensory examination, and intact cranial nerves 2-12.  T. 152.  On April 8 and 29, 2005, Dr. Chang noted identical objective findings.  T. 149, 151.  Dr. Chang also noted on April 29 that Plaintiff could not be referred for physical therapy as the

physical therapist indicated that it would aggravate her symptoms. T. 149. Plaintiff was referred to a neurosurgeon instead. T. 149.

Plaintiff underwent an MRI at the S . Elizabeth Medical Center on April 15, 2005, which revealed "extensive degenerative disease with possible spasm," and disk herniations at multiple levels with the most severe at C4-5 on the right. T. 148. The MRI was "similar to the previous exam," with the exception that at the C5-6 level the large central disk herniation had markedly improved. T. 148.

Plaintiff was examined by Dr. Clifford Soults, a neurosurgeon, on July 19, 2005. T. 160-61. Dr. Soults found that Plaintiff had pain on left lateral rotation and extension of the neck, a "fairly normal" range of motion, and no Sperling's sign. T. 160. She had full strength, intact sensory examination, and a stable gait. T. 161. Her reflexes were asymmetric at the triceps at two on the right and zero on the left, three at the biceps, two at the brachial radialis, two at the patella, and two at the Achilles. T. 161. Dr. Soults recommended a trial of physical therapy and indicated that surgery was not a good option. T. 161.

Plaintiff submitted additional evidence after the ALJ rendered his decision. T. 186-206. Plaintiff was examined on July 20, 2005 by NP Deborah Morris. T. 204. Plaintiff reported being disabled since May 2004. T. 204. Physical examination revealed no asymmetry, full range of motion, no instability, no weakness, and full range of motion in the upper extremities. T. 205-06. Plaintiff was examined by Dr. Celesta Hunsiker on August 19, 2005, complaining of an itch and rash to her left hand as a result of wearing a ring. T. 201. Dr. Hunsiker noted no pain or tenderness to palpation in the neck. T. 202. On September 23, 2005, Dr. Hunsiker noted that Dr. Soults was "not willing to sign any

disability paperwork." T. 193. Dr. Hunsiker found no tenderness with palpation in the neck, normal gait and station. T. 199. She also noted pain in the head/neck area, moderate tenderness, and mild restriction of motion. T. 199. Dr. Hunsiker indicated that she would not complete disability paperwork until a functional capacity evaluation had been completed by physical therapy. T. 199.

Plaintiff was examined again by Dr. Hunsiker on October 5, 2005. T. 195. Dr. Hunsiker found that Plaintiff had a normal gait and station, moderate pain and tenderness in the spine and ribs, tenderness to palpation over the lumbosacral regions, and negative straight-leg raising ("SLR") test. T. 196. Plaintiff was able to heel/toe walk and did one squat. T. 196. Plaintiff was continued on Tylenol and mobic and muscle relaxers. T. 196. She was referred to aquatherapy for back strain. T. 196-97. On November 10, 2005, Dr. Hunsiker noted that Plaintiff was participating in aquatherapy and showing some improvement. T. 192. Physical examination findings were identical to those of October 5, 2005. T. 193. On December 1, 2005, Dr. Hunsiker found no pain or tenderness to palpation of the neck, and normal cranial nerves 2-12. T. 190. No tenderness of the spine was noted. T. 190. On December 14, 2005, Dr. Hunsiker noted no tenderness to palpation of the neck, normal gait and station, pain and moderate tenderness over the lumbar spine. T. 187. She noted a continuing diagnosis of lumbar strain. T. 188.

### B. Review of the ALJ's Decision

Because Plaintiff has made no specific legal challenges to the validity of the Commissioner's decision, the Court will evaluate the decision for compliance with the appropriate legal standards and basis in substantial evidence of record. See Machadio v.

11

Apfel, 276 F.3d 103, 108 (2d Cir. 2002).

### 1. Appropriate Legal Standards

As stated above, the ALJ is required to follow the five-step sequential evaluation process for social security disability claims. 20 C.F.R. §§ 404.1520, 416.920; Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). In this case, the ALJ properly described the five-step analysis. T. 14-15. The ALJ found that, at the first step, Plaintiff had not engaged in substantial gainful activity since May 1, 2002. T. 15. At the second step, the ALJ found that Plaintiff's degenerative disk disease of the cervical spine was a "severe" impairment under the regulations. T. 15. At the third step, the ALJ found that none of Plaintiff's impairments met or equaled one of the listed impairments of 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). T. 16.

The ALJ found that Plaintiff retained the RFC to sit, stand, and walk for prolonged periods with appropriate breaks; lift and carry ten pounds frequently and twenty pounds occasionally; perform tasks that require frequent, but not constant, use of her upper extremities to push, pull and reach; and perform jobs that entailed simple instructions. T. 17.

At the fourth step, the ALJ concluded that Plaintiff was unable to perform her past relevant work as a mortgage loan processor and closer. T. 18. The ALJ reached this conclusion because these jobs entailed more than simple instructions, which were outside Plaintiff's RFC per the ALJ's RFC determination. T. 17-18.

At the fifth step, the ALJ applied the Medical-Vocational Guidelines and determined that Plaintiff was a younger individual with a high school education, two years of college

and an ability to communicate in English, and that transferability of skills was not an issue in this case. T. 18; see 20 C.F.R. §§ 404.1563, 404.1564, 404.1568, 416.963, 416.964, 416.968. The ALJ noted that Plaintiff could not perform the full range of light work due to her limitation to jobs that required frequent, but not constant, use of her upper extremities to push, pull and reach, and that did not entail more than following simple instructions. T. 19. He consulted SSR 83-12 and 83-14 and determined that these restrictions did not significantly erode the occupational base for light work. T. 19; see SSR 83-12, *Capability to Do Other Work – The Medical-Vocational Rules as a Framework for Evaluating Exertional Limitations Within a Range of Work or Between Ranges of Work*, 1983 WL 31253 (S.S.A. 1983); SSR 83-14, *Capability to Do Other Work – The Medical-Vocational Rules as a Framework for Evaluating a Combination of Exertional and Non-Exertional Impairments*, 1983 WL 31254 (S.S.A. 1983). Using Medical-Vocational Rules 202.21 and 202.22 as a framework for decision-making, the ALJ found that there were jobs existing in the national economy which Plaintiff could perform and that a finding of not disabled was warranted under the Guidelines. T. 19.

The ALJ followed the appropriate legal analysis when reaching his disability determination. The ALJ properly outlined the five-step disability evaluation process, and provided sufficient reasoning based on the entirety of the medical record in support of his conclusion. T. 14-19. Plaintiff did submit additional medical records following the ALJ's decision. See T. 186-206. Such evidence must be considered by the Appeals Council where it is new, material, and relates to the period on or before the date of the ALJ's hearing decision. See 20 C.F.R. §§ 404.970(b), 416.1470(b). The Appeals Council will

review the case if it finds that the ALJ's action, findings, or conclusion were contrary to the weight of the record as a whole, including the additional evidence. Id.; see Perez v. Chater, 77 F.3d 41, 44 (2d Cir. 1996).

In this case, although additional evidence was submitted that was relevant to the pertinent time period, it did not indicate that the ALJ's decision was contrary to the weight of the medical record as a whole. The evidence, consisting mainly of records from Dr. Hunsiker, indicated that Plaintiff had tenderness of the neck and spine but that she had full ranges of motion, normal gait and station, and intact cranial nerves. T. 187-88, 190, 195-96, 199, 205-06. These findings are consistent with the rest of the medical evidence, which indicates that while Plaintiff had some pain and tenderness of the neck and spine, she was consistently found to have a normal gait, full strength, intact sensory examinations, and full ranges of motion of the upper extremities. See T. 125-27, 130, 133, 135, 149, 151-52, 160-61. Thus, the Appeals Council was not required to reopen the case based on the additional medical evidence submitted by Plaintiff.

### 2. Substantial Evidence

The ALJ's decision was based on substantial evidence of record. In rendering an RFC determination, an ALJ must consider objective medical facts, diagnoses, and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations. 20 C.F.R. § 416.945; *see* Martone v. Apfel, 70 F. Supp. 2d 145, 150 (N.D.N.Y 1999) (citing LaPorta v. Bowen, 737 F. Supp. 180, 183 (N.D.N.Y 1990)). An ALJ must specify the functions that a plaintiff is capable of

performing, and may not simply make conclusory statements regarding a plaintiff's capacities.  Verginio v. Apfel, No. 97-CV-456, 1998 WL 743706, *3 (N.D.N.Y Oct. 23, 1998); LaPorta, 737 F. Supp. at 183.

In determining Plaintiff's RFC, the ALJ properly considered opinions of state agency physicians Drs.Wickham and Chaplin.  T. 17-18.  Although agency physicians' opinions are not entitled to controlling weight, they are recognized as highly qualified physicians who are experts in the evaluation of medical issues in disability claims under the Social Security Act, and their opinions must be considered as expert opinion evidence from non-examining sources and given appropriate weight.  20 C.F.R. § 404.1527(f); SSR 96-6p, *Consideration of Administrative Findings of Fact by State Agency Medical and Psychological Consultants and Other Program Physicians and Psychologists at the Administrative Law Judge and Appeals Council Levels of Administrative Review; Medical Equivalence*, 1996 WL 374180, at *3 (S.S.A. 1996).  The ALJ in this case appropriately assigned the state agency physicians' opinions significant, but not controlling, weight, as they were consistent with the medical record as a whole.  T. 18.

The ALJ properly took into account objective medical evidence regarding Plaintiff's ranges of motion, sensory deficits, and motor disruption when considering whether Plaintiff had a disability under the regulations.  20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2).  This type of evidence is to be considered in order to aid the ALJ in making reasonable conclusions about the intensity and duration of the claimant's symptoms.  Id.  The ALJ noted that although Plaintiff's MRIs showed degenerative disk disease, objective medical findings found that she generally had a normal range of motion, no sensory or motor loss,

and full strength in her upper extremities.  T. 17; see T. 187-88, 190, 195-96, 199, 205-06. Additionally, Plaintiff reported that her activities included cleaning, doing laundry, ironing, preparing simple meals, reading, watching television, shopping, using public transportation, visiting family and friends, attending church, and exercising three days a week for a half-hour each.  T. 86-87, 113-14.  It is also noted that the medical records contain a gap for the time period from May 2001 through June 2002, when Plaintiff was examined by Dr. Dennis.  T. 127.  There is also a gap for the time period from June 2002 through February 2004, when Plaintiff was examined by Dr. Newell.  T. 127-27, 133.  It does not appear that Plaintiff obtained any treatment for her medical conditions during these time periods.

As to Plaintiff's apparent claims that the administrative transcript misrepresents her reports as to her daily activities, there is no evidence that this is the case.  See Dkt. No. 14.  The ALJ is entitled – and required – to rely on the administrative record when determining disability.  See 20 C.F.R. §§ 404.1512, 416.912.  A review of the administrative transcript compels the conclusion that the ALJ's decision accurately reflected the contents of the transcript.  Moreover, Plaintiff has submitted no evidence which would suggest that any portion of the administrative transcript is erroneous.

The ALJ's decision indicates that he considered the entire medical record when reaching his conclusion as to Plaintiff's RFC and ultimate disability.  This decision was based on substantial evidence.

## VI.  Conclusion

For the reasons stated above, it is hereby

**RECOMMENDED** that the decision denying disability benefits be **AFFIRMED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  Roldan v. Racette, 984 F.2d 85 (2d Cir. 1993) (citing Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

DATED: February 21, 2008  
         Albany, New York

_David R. Homer_  
United States Magistrate Judge